# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3598 | **DATE** | 12/30/2002 |
| **CASE TITLE** | Anaida Lopez vs. Children's Memorial Hospital, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Angela Williams' motion for summary judgment (17-1) is granted in part and denied in part. Defendants' motion for summary judgment (18-1) is granted in part and denied in part. Defendants' motion to strike portions of plaintiff's response to defendants' statement of facts (27-1) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | **Document Number** |
| | No notices required. | | |
| | Notices mailed by judge's staff. | DEC 31 2002 date docketed | 28 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**DEC 3 1 2002**

| | |
|---|---|
| ANAIDA LOPEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 02 C 3598 |
| v. | ) |
| | ) Judge George W. Lindberg |
| CHILDREN'S MEMORIAL HOSPITAL, | ) |
| ANGELA WILLIAMS, individually, and | ) |
| LINDA BLANNING, individually, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anaida Lopez's amended complaint alleges claims of racial discrimination and harassment under 42 U.S.C. § 1981; racial discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; and retaliatory discharge under state law against defendant Children's Memorial Hospital ("CMH"). The amended complaint alleges a claim of violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against CMH and defendant Angela Williams ("Williams"). Finally, the amended complaint alleges a state law claim of civil conspiracy against Williams and defendant Linda Blanning ("Blanning"). Before the court are defendants' motion to strike and motions for summary judgment. For the reasons stated below, the motions are granted in part and denied in part.

### I. Factual Background

At the outset, the court must evaluate defendants' Motion to Strike Portions of Plaintiff's Responses to Defendants' Statement of Facts. The court agrees with defendants that plaintiff's responses to paragraphs 66, 68, and 81 are inadequately supported, since plaintiff relies solely on



her amended complaint. See Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial). In addition, paragraphs 41-43, 47, 54, 73, 78, and 84 of plaintiff's responses are not responsive to the statements they purport to address. Finally, plaintiff's response to paragraph 69 does not supply a citation to the record in support of her denial, as required by Local Rule 56.1(b)(3)(A). The court strikes the foregoing responses, and deems defendants' statements of fact in those paragraphs admitted. In addition, the court disregards any additional information or argument presented in plaintiff's responses. See Stohl v. St. Joseph Health Ctrs. and Hosp., No. 97 C 4970, 1998 WL 312005, at *3 (N.D. Ill. June 4, 1998). Defendants' motion to strike is denied as to defendants' remaining objections.

The following facts are undisputed, unless otherwise noted. Plaintiff is a Hispanic woman of Puerto Rican descent, and was 45 years old during the time relevant to this action. Plaintiff was hired by defendant CMH in 1979 as a full-time Unit Clerk, and was promoted to Medical Secretary the following year. Plaintiff's position title changed to Family Service Representative in 1997. As a Family Service Representative, plaintiff was responsible for checking in patients, and performing clerical duties. Throughout her employment at CMH, plaintiff worked in the Rehabilitation Services cluster of departments.

From 1990 to 1999, Glenn Paustian supervised both the clinical staff (i.e., the physicians) and the clerical staff, including the Family Service Representatives in plaintiff's department. In early 1999, CMH reorganized the Rehabilitation Services cluster, and hired defendant Williams in April 1999 to supervise the clerical functions. In July 1999, Paustian resigned. In September

1999, CMH hired defendant Blanning to supervise the clinical staff. Blanning did not have supervisory authority over plaintiff, and Blanning and Williams did not have supervisory authority over each other. According to defendants, Blanning nevertheless was responsible for communicating issues that arose with the Family Service Representatives to Williams, because Williams' office was located in another building from the Family Service Representatives.

According to plaintiff, in either 1997 or 1999, supervisor Martha Ellsworth discouraged plaintiff from working overtime, due to budgetary reasons. Ellsworth told plaintiff that if she did work overtime, "not to let her know about it." In staff meetings, Williams also discouraged overtime. Plaintiff worked ten hours of overtime per month in 1997, six hours per month in 1998, and six to eight hours per month in 1999, but was not paid for it.

Williams decided to start cross-training Family Service Representatives so that each Family Service Representative would be able to work in each department within the Rehabilitation Services cluster, as staffing needs warranted. Plaintiff's 1999 performance review listed participating in Family Service Representative cross-training as a goal for the upcoming year. Plaintiff was satisfied with her performance evaluation and goals. Plaintiff was chosen to be cross-trained first.

Plaintiff's scheduled work hours were 7:30 a.m. to 4:00 p.m. In August 1999, plaintiff asked Williams for permission to temporarily modify her schedule to accommodate plaintiff's child care needs. Specifically, plaintiff asked to be allowed to arrive at work twenty minutes later and leave work thirty minutes earlier four days a week, and leave at 1:30 p.m. one day a week, for a month. Williams denied plaintiff's request. Plaintiff instead used accrued vacation time to take the time off. Williams allowed some of her other employees to use "flex-time"

schedules, and determined who could do so on an individual basis.

Plaintiff claims that in the fall of 1999, Williams threw a log sheet at her, which landed on plaintiff's desk and did not hit her.

Also in the fall of 1999, Williams instructed plaintiff to stop translating Spanish for a patient. Williams gave this instruction because she was concerned about CMH's potential liability if plaintiff translated a medical term incorrectly. Plaintiff understood that it was hospital policy for only hospital interpreters to translate for patients.

In October 1999, plaintiff requested an electric stapler from Williams. According to plaintiff, Williams raised her voice, and grabbed plaintiff's sleeve and shook it, saying: "Look around and get real. This would never work here." Plaintiff was neither frightened nor injured.

CMH employees, including plaintiff, were required to fill out handwritten time cards, and submit them to their supervisors. When Paustian was a supervisor at CMH, he had a practice of allowing employees to make up a late arrival of five to ten minutes without notifying him or recording the late arrival on the time card.

On January 4 and 6, 2000, Blanning noticed that plaintiff arrived at work after 7:30 a.m., and informed Williams of plaintiff's tardiness. On January 6, Williams counseled plaintiff on her tardiness and instructed her to accurately reflect her correct arrival time on her time card. Plaintiff told Williams "not to worry" because she "always would reflect [her] time on the time card." Plaintiff did not ask Williams if it would be acceptable to record an arrival time of 7:30, and then make up the lost time during the day. After this conversation, Williams asked Blanning to watch when plaintiff arrived at work each day. Blanning never had any conversations with Williams about any other employees' tardiness.

4

Plaintiff arrived late for work again on January 10 and 13, 2000. Plaintiff recorded a 7:30 a.m. arrival time for those dates, as well as January 4, on her time card. At Williams' request, Blanning e-mailed plaintiff's arrival times to Williams. Blanning's e-mail indicated that plaintiff had arrived late to work six times during the pay period. Plaintiff's justification for recording incorrect arrival times was that this practice had been permitted under her former supervisor, Paustian. Williams terminated plaintiff's employment with CMH on January 13, 2000, for falsifying her time card.

## II. Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The Seventh Circuit has noted that the summary judgment standard should be applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993).

### A. Race, National Origin, and Age Discrimination

Defendants contend that plaintiff does not establish a prima facie case of race, national origin, and age discrimination, because plaintiff was not performing her job satisfactorily when she was terminated, and because she fails to show that similarly situated employees were treated more favorably. Plaintiff has presented no direct evidence of discrimination, and therefore the court uses the familiar McDonnell Douglas burden-shifting analysis. Under that analytical framework, a plaintiff bears the burden of establishing a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated employees were treated more favorably. Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001). If the plaintiff establishes a prima facie case of discrimination, the employer must then show a nondiscriminatory reason for the employment action. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002). If the employer does so, the plaintiff must then show that the employer's explanation is pretextual. Id. This analysis applies to plaintiff's claims under Section 1981 and the ADEA, as well as Title VII. See Lalvani v. Cook County, 269 F.3d 785, 789 (7th Cir. 2001) (Section 1981); Nawrot v. CPC Int'l, 277 F.3d 896, 905-06 (7th Cir. 2002) (ADEA).

Defendants first argue that plaintiff fails to meet her burden of establishing a prima facie case because she fails to establish that she was performing her job satisfactorily when she was terminated.[1] According to defendants, plaintiff was not meeting CMH's legitimate expectations

---

[1] Defendants do not dispute that plaintiff is a member of a protected class, or that her discharge constituted an adverse employment action.

6

because she falsely recorded timely arrival times on her time card when in actuality she was tardy. CMH's Employee Standards of Conduct and Work Rules lists falsification of timekeeping records as an infraction. CMH's Progressive Discipline Policy provides that a single violation of the rule against falsification of time cards may result in immediate discharge. Plaintiff was familiar with these policies.

Plaintiff responds that her previous supervisor had condoned the practice of noting a timely arrival at work despite having arrived late, as long as the employee made up the lost time during the day. Thus, according to plaintiff, CMH could not legitimately expect her to correctly record her time on her time card without first specifically warning her that employees would no longer be permitted to make up time as they had previously done.

However, the evidence shows that plaintiff received just such a warning. On January 6, 2000, after plaintiff had arrived late for the second time in a week, Williams instructed her to accurately record her correct arrival time on her time card. Although plaintiff does not dispute that she received this instruction, she disputes that she and Williams had the same understanding of the meaning of the word "accurately." According to plaintiff, she understood that she would be in compliance with Williams' instruction to record her arrival time "accurately," even if she recorded an incorrect start time, as long as she made up any time lost due to tardiness during the day, resulting in no net loss of time worked for the day. The court finds that no reasonably jury would credit plaintiff's explanation. Williams did not instruct plaintiff to record her total time worked during the day accurately; Williams specifically told plaintiff to record her correct arrival time. When plaintiff subsequently recorded incorrect arrival times on her time card, she was subject to discharge under CMH's policy. Plaintiff has failed to establish that she was meeting

7

CMH's legitimate expectations when she was terminated.[2]

Nor has plaintiff established that CMH treated plaintiff differently than other similarly situated employees. Plaintiff has offered no evidence that CMH did not terminate any employee who was not Hispanic, not of Puerto Rican heritage, or not over the age of forty, who incorrectly recorded timely arrivals on a time card after being instructed to accurately record arrival times. Since plaintiff has failed to establish a prima facie case of discrimination, the court need not consider whether defendant's reasons for its actions were legitimate or pretextual.[3]

## B. Hostile Work Environment

To maintain an actionable claim under a theory that a defendant's conduct created a hostile work environment, and thus constituted harassment in violation of Title VII, a plaintiff must demonstrate harassment "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462 (7th Cir.), cert. denied, 123 S. Ct. 97 (2002). The working environment must be both objectively and subjectively offensive. Id. at 463. Whether a work environment is hostile depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

---

[2] Although neither party mentions plaintiff's claim of retaliation under Title VII, that claim also fails because plaintiff cannot establish that she was performing her job in a satisfactory manner. See Hilt-Dyson, 282 F.3d at 465 (to prevail on a retaliation claim, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) she was treated less favorably than any other similarly situated employee who did not engage in such protected activity).

[3] Given this conclusion, the court also need not consider whether plaintiff's employment relationship provided a sufficient contractual relationship to support a Section 1981 claim.

8

with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "The workplace that is actionable is the one that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) (citing Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995)). Moreover, plaintiff must show that the complained-of conduct has a racial or national-origin-related character or purpose. See Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345-46 (7th Cir. 1999).

In this case, plaintiff has failed to show that she suffered severe or pervasive harassment. Plaintiff contends that the following incidents amount to severe or pervasive harassment:[4]

- Being required to cross-train;

- Williams' statement to plaintiff that she should not feel singled out, in response to plaintiff's inquiry as to why she was being cross-trained first;

- Williams' act of shaking plaintiff by the sleeve and telling her to "get real," in response to plaintiff's request for an electric stapler;

- Williams' statement to plaintiff that "just because you have a Spanish last name does not qualify you to translate" and instruction to plaintiff that she stop translating Spanish for a patient;

- Williams' act of throwing a log sheet at plaintiff;

- Blanning's watching when plaintiff arrived for work; and

- Williams' denial of plaintiff's flex-time request.

The cross-training requirement and monitoring by a supervisor (even a supervisor who was not

---

[4] Although it is unclear, plaintiff may also contend that some of these incidents, such as the cross-training requirement, individually constitute discrimination. However, none of these incidents amounts to an materially adverse employment action, and thus any discrimination claim based on an individual incident would fail. See Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993) (a materially adverse employment action requires a significant change in employment status, such as being fired, being reassigned with significantly different responsibilities, or suffering a significant reduction in pay or benefits).

directly responsible for plaintiff) appear to be routine work-related activities, and Williams' remark to plaintiff that she should not feel singled out is not objectively harassing. In addition, plaintiff has offered no evidence that she was physically threatened. When Williams threw a log sheet at plaintiff, it did not hit her, and when Williams shook plaintiff's sleeve, plaintiff was not frightened or injured. Reviewing the record before the court, and keeping in mind the factors enumerated in Harris, the court concludes that these incidents, even considered together, do not rise to the level of severe and pervasive harassment.

Nor has plaintiff shown that these incidents had a racial or national-origin character or purpose. The only incident in which plaintiff's race or national origin arguably was implicated was when Williams instructed her to stop interpreting Spanish for a patient, stating that merely having a Spanish surname did not qualify her to translate. However, plaintiff concedes that it was hospital policy to limit interpreting duties to official hospital interpreters. Plaintiff has failed to establish that defendants' conduct created a hostile work environment.

### C. Retaliatory Discharge

The court next turns to plaintiff's claim that CMH retaliated against her, in violation of state law, for complaining that she was the only employee being cross-trained, asking for an electric stapler, and complaining about not being paid for the overtime that she was working. In recognizing the tort of retaliatory discharge, Illinois courts acknowledged that it was necessary to preserve rights in cases where no other remedy was available to vindicate public policy. Brudnicki v. General Elec. Co., 535 F. Supp. 84, 89 (N.D. Ill. 1982) (citing Kelsay v. Motorola, Inc., 384 N.E.2d 353 (Ill. 1978)). Thus, to establish a claim of retaliatory discharge, a plaintiff must show not only that she was discharged in retaliation for her activities, but also that the

10

discharge contravenes "a clearly mandated public policy." Jacobson v. Knepper & Moga, P.C., 706 N.E.2d 491, 493 (Ill. 1998). The matter "must strike at the heart of a citizen's social rights, duties, and responsibilities" to implicate a clearly mandated public policy, and thus justify application of the tort. McGrath v. CCC Info. Servs., Inc., 731 N.E.2d 384, 391 (Ill. App. Ct.), appeal denied, 742 N.E.2d 329 (Ill. 2000). The Illinois Supreme Court has "repeatedly and consistently emphasized a goal of restricting the tort of retaliatory discharge." McGrath, 731 N.E.2d at 390. To that end, the Illinois Supreme Court has recognized retaliatory discharge claims in only two settings: (1) where an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act, 820 ILCS 305/1, et seq.; and (2) where an employee is discharged in retaliation for "whistle blowing." Jacobson, 706 N.E.2d at 493.

In this case, the conduct that plaintiff contends led to her discharge did not involve filing a claim under the Workers' Compensation Act or whistle blowing. Her claim does not "strike at the heart" of her social rights, duties, and responsibilities, but rather "is more in the nature of a private and individual grievance insufficient to justify a claim of wrongful discharge." See McGrath, 731 N.E.2d at 391. Moreover, other remedies are available to plaintiff under the Illinois Human Rights Act ("IHRA"). Here, plaintiff claims that her termination for complaining about these incidents constitutes *discriminatory* retaliation. The IHRA provides an exclusive remedy for human rights violations under state law, including employment discrimination, see 775 ILCS 5/2-102(A) & 5/8-111(C), and therefore there is no other remedy for retaliatory discharge in employment discrimination cases under Illinois law. Bell v. American Dental Ass'n, No. 00 C 0573, 2000 WL 1367946, at *3 (N.D. Ill. Sept. 15, 2000); Johnson v. Baxter

Healthcare Corp., 907 F. Supp. 271, 275-76 (N.D. Ill. 1995). Summary judgment is granted in CMH's favor as to plaintiff's retaliatory discharge claim.

### D. Fair Labor Standards Act

Next, defendants contend that plaintiff's Fair Labor Standards Act ("FLSA") claim is barred by the two-year statute of limitations. Plaintiff responds that defendants' conduct was willful, and therefore a three-year statute of limitations should be applied. Plaintiff filed her original complaint on May 20, 2002 and an amended complaint containing the FLSA claim on August 15, 2002. Plaintiff claims that the last time she worked overtime for which she was not compensated was in December 1999.[5] Thus, if the statute of limitations is not extended to three years, her claim is time-barred.

A cause of action brought under the FLSA must be commenced "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To qualify for a three-year statute of limitations, the plaintiff bears the burden of establishing that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Bankston v. State of Illinois, 60 F.3d 1249, 1253 (7th Cir. 1995).

The evidence before the court is that in 1997 or 1999, plaintiff was "discouraged" from

---

[5] Plaintiff's FLSA claim would relate back to the date of the original complaint for purposes of tolling the statute of limitations only if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." See Fed. R. Civ. P. 15(c)(2). Because plaintiff alleges that she worked overtime without compensation in December 1999, it makes no difference at this point whether plaintiff's FLSA claim dates from May 20, 2002 or August 15, 2002. Therefore, the court need not resolve the issue of whether the relation back doctrine applies.

12

working overtime, and was told by a supervisor that if she worked overtime, "not to let her know about it." Williams was told by three of her supervisors that overtime was to be discouraged among staff for budgetary reasons. Williams discouraged overtime to her staff during general staff meetings. Plaintiff worked overtime in 1997, 1998, and 1999, without being compensated for it. Plaintiff did not record the overtime on her time card. According to plaintiff she did not record it because the supervisor had told her not to let her know about any overtime. The court concludes that a reasonable jury could find that defendants' conduct was willful, based on the evidence that a supervisor warned plaintiff not to inform her if she worked overtime. Accordingly, the three-year statute of limitations applies, and plaintiff's FLSA claim is timely as to at least some of her overtime. Defendants' motion for summary judgment is denied as to plaintiff's FLSA claim.

### E. Civil Conspiracy

Finally, defendants contend that the Illinois Human Rights Act preempts plaintiff's civil conspiracy claim against Williams and Blanning. As noted above, the IHRA removes from federal and state court jurisdiction all civil rights violations covered by the Act. 775 ILCS 5/8-111(C); Geise v. Phoenix Co. of Chicago, 639 N.E.2d 1273, 1276 (Ill. 1994); Haas v. Village of Hinsdale, No. 01 C 1278, 2001 WL 1609367, at *2 (N.D. Ill. Dec. 17, 2001). Under the IHRA, "civil rights violations" include discrimination in the terms, privileges, or conditions or employment, based on race and age. 775 ILCS 5/1-103(Q) & 5/2-102(A). Although torts independent of any civil-rights claims remain subject to judicial adjudication, if a claim is "inextricably linked" to a civil rights violation, it is preempted by the IHRA, and must be presented to the Illinois Human Rights Commission rather than to a court. Geise, 639 N.E.2d at

13

1277; Maksimovic v. Tsogalis, 687 N.E.2d 21, 22 (Ill. 1997).

The court concludes that plaintiff's civil conspiracy claim is preempted by the IHRA. That claim alleges that Williams conspired with Blanning to terminate plaintiff, through Williams' instruction to Blanning that Blanning keep track of plaintiff's arrival. Plaintiff's Amended Complaint specifically alleges that this civil conspiracy "was motivated by Plaintiff's age and race." These same acts form the basis of plaintiff's racial discrimination and harassment claims. Thus, a civil rights violation forms the core of plaintiff's theory, rather than being "'merely incidental' to a mundane tort." See Smith v. Chicago School Reform Bd. of Trustees, 165 F.3d 1142, 1151 (7th Cir. 1999) (citing Maksimovic, 687 N.E.2d at 23). Accordingly, the IHRA preempts her civil conspiracy claim.

**ORDERED:** Defendant Angela Williams' motion for summary judgment [17-1] is granted in part and denied in part; the motion is granted as to Count IV (civil conspiracy) and denied as to Count VI (Fair Labor Standards Act). Defendants Children's Memorial Hospital and Linda Blanning's Motion for Summary Judgment [18-1] is granted in part and denied in part; the motion is granted as to Counts I (Section 1981), II (Title VII), III (ADEA), IV (civil conspiracy), and V (retaliatory discharge), and denied as to Count VI (Fair Labor Standards Act). Defendants Children's Memorial Hospital and Linda Blanning's Motion to Strike Portions of Plaintiff's Response to Defendants' Statement of Facts [27-1] is granted in part and denied in part.

ENTER:

*George W. Lindberg*
George W. Lindberg
Senior United States District Judge

DATED: __DEC 3 0 2002__